IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 24-cv-00079-PAB-STV

KATHLEEN KIMSEY,

Plaintiff,

v.

SAFECO INSURANCE COMPANY OF AMERICA,

Defendant.

---

**ORDER**

---

This matter comes before the Court on Defendant Safeco Insurance Company of America's Motion for Summary Judgment [Docket No. 48] and Plaintiff Kathleen Kimsey's Motion for Partial Summary Judgment [Docket No. 49]. The Court has jurisdiction pursuant to 28 U.S.C. § 1332. This case arises out of an incident, on January 23, 2023, where plaintiff's son drove a vehicle into the Chattahoochee River in Georgia.

## I. UNDISPUTED FACTS[1]

Defendant issued Colorado Automobile Policy No. Y8267593 (the "Policy") with policy dates of May 28, 2022 to May 28, 2023. Docket No. 48 at 4, ¶ 10; Docket No. 49 at 2, ¶ 1. Plaintiff and her husband are the named insureds on the Policy and their son, Austin Kimsey, is named as a "rated driver." *Id.* A 2018 Audi Q5 Prestige (the "Audi") is a listed vehicle on the Policy. Docket No. 48 at 4, ¶ 10. Austin's parents bought the

[1] The following facts are undisputed unless otherwise noted.

Audi in 2021 for Austin. *Id.* at 8, ¶ 30. Austin registered the Audi in Colorado and identified his address as 446 Courtfield Way, Castle Pines, Colorado 80108 (the "Castle Pines Address") on every renewal through the date of January 23, 2023. *Id.*

The Policy states that defendant will provide comprehensive coverage for property damage subject to and limited by all the terms, conditions, limitations, and exclusions of the Policy. *Id.* at 4, ¶ 13. The Policy provides comprehensive coverage in the amount of actual cash value for a total loss vehicle less a $1,000 deductible. *Id.* Comprehensive care under the Policy is triggered if a property damage loss was caused by one of ten enumerated causes, including damage or loss caused by "water or flood." *Id.* at 5, ¶ 14. The Policy contains the following exclusion (the "Intentional Act Exclusion"):

> We will not pay for:
>
> . . .
>
> 21. Loss to your covered auto or a non-owned auto caused by:
>
> a. an intentional act of; or
> b. the directions of;
>
> you or a family member.

*Id.*, ¶ 15 (emphasis omitted). Under the Policy, "you" is defined as the "named insured" shown on the Declaration and the named insured's spouse or domestic partner. *Id.*, ¶ 16. "Family member" is defined as a "person related to you by . . . blood . . . who is a resident of your household, even if temporarily living elsewhere." *Id.*, ¶ 17.

After graduating from high school in 2019, Austin attended the University of Alabama and lived in Tuscaloosa, Alabama for three years. Docket No. 49 at 2, ¶¶ 2-3. Austin always had a room to stay at plaintiff's home and had some of his personal

belongings at the home. Docket No. 48 at 7, ¶ 26. During his first summer of college in 2020, Austin returned to Colorado due to the COVID-19 pandemic. Docket No. 49 at 2, ¶ 4. During his second summer of college, Austin returned to Colorado for an internship with Lockhead Martin and lived in a house near the University of Denver. *Id.*, ¶ 5. Austin paid for his housing that summer. *Id.*, ¶ 6. On May 17, 2022, Austin renewed his driver's license in Colorado and listed his address as the Castle Pines Address. Docket No. 48 at 7-8, ¶ 27. At the time of the January 23, 2023 incident, Austin had a Colorado driver's license. *Id.* Austin has been registered to vote in Colorado since 2020. *Id.* at 8, ¶ 29.

In May 2022, Austin graduated from the University of Alabama. Docket No. 49 at 2, ¶ 7. He moved to Atlanta, Georgia in July or August 2022. *Id*. Before moving to Atlanta, Austin stayed in Tuscaloosa and spent a few days in Colorado, but did not stay at plaintiff's house. *Id.* at 3, ¶ 8. Austin signed a one-year lease on an apartment in Atlanta. *Id.*, ¶ 9. Austin had a job doing commercial real estate appraisals in Atlanta. *Id.*, ¶ 10. Austin's 2022 Form W-2 listed his Atlanta address. *Id.*, ¶ 11. When Austin filed his 2022 tax returns, Austin listed his "home address" as the Castle Pines Address. Docket No. 48 at 8, ¶ 28. Austin hired a realtor and looked at approximately 12 to 15 homes for purchase in the Atlanta area. Docket No. 49 at 3, ¶ 15.[2] In December 2022, Austin obtained his Georgia State Real Property Appraiser license. *Id.*, ¶ 17.[3] Austin

[2] Defendant denies this assertion, arguing that "Austin testified he was 'thinking about [continuing] renting' but noted that he had also 'looked at several houses for sale' but had no firm plans and had not reached-out to any lenders." Docket No. 57 at 3, ¶ 15. This does not dispute plaintiff's assertion that Austin looked at homes for purchase in Atlanta. Therefore, the Court deems this fact admitted.

[3] Defendant denies this assertion, arguing that "Plaintiff has not supported this alleged fact with admissible evidence." Docket No. 57 at 4, ¶ 17. Defendant does not

testified that he "wanted to take [my] time being away from where I grew up." *Id.*, ¶ 16 (internal quotation omitted).[4]

On the night of January 23, 2023, Austin believes he drank "around a bottle of wine" and was also taking prescription Prozac and Xanex. Docket No. 48 at 2, ¶ 2 (internal quotation omitted). That night, Austin attempted to commit suicide by cutting his neck. *Id.* at 2-3, ¶ 3. After this attempt did not work, Austin formulated a plan for a second suicide attempt by driving the Audi into the Chattahoochee River. *Id.* Because he had not been to the Chattahoochee River before that night, Austin used his cellphone to obtain GPS directions to a boat ramp that would give him access the river. *Id.* at 3, ¶ 4. Austin drove the Audi into the Chattahoochee River in an effort to commit suicide by drowning inside the vehicle. *Id.* at 2, ¶ 1. Austin's intent was that he "wouldn't be able to escape the car, which would ultimately result in my drowning." *Id.* at 2-3, ¶ 3.

After driving the Audi into the river, Austin changed his mind about committing suicide, escaped from the Audi through the rear hatch door, and called 911. *Id.*, ¶ 6. The police cited Austin for driving under the influence. *Id.* at 2-3, ¶ 8. The police report lists Austin's address as being in Atlanta. Docket No. 58 at 8, ¶ 61. Austin's discharge

explain why plaintiff's evidence is inadmissible and, moreover, Austin testified to this fact during his deposition. *See* Docket No. 65 at 3-4, ¶ 17 (citing Docket No. 51-1 at 35, 34:9-22). Accordingly, the Court deems this fact admitted.

[4] Defendant denies this assertion, arguing that "Austin's actions demonstrate that he intended to continue to reside in Colorado." Docket No. 57 at 3, ¶ 16. Because defendant does not deny that Austin testified that he "wanted to take . . . time being away from" where he grew up, the Court will deem this fact admitted without admitting the truthfulness of Austin's testimony.

paperwork after his medical treatment listed his address as the Castle Pines Address. Docket No. 48 at 8, ¶ 31.

On or about January 24, 2023, plaintiff made a property damage claim with defendant seeking insurance benefits to cover the damage to the Audi that occurred on January 23, 2023. *Id.* at 4, ¶ 9. In investigating the claim, defendant considered statements from plaintiff and Austin, who both stated that Austin drove the Audi into the river. *Id.* at 6, ¶ 18.[5] Defendant also reviewed the Cobb County Police Department Report, which stated that Austin "drove into the river intentionally" and that Austin had been driving under the influence. *Id.* The claim note included Austin's statement that he was "coming from his apartment in Atlanta" when the January 23, 2023 incident occurred. Docket No. 58 at 8-9, ¶ 65.

On February 22, 2023, defendant sent plaintiff a letter denying her claim pursuant to the Intentional Act Exclusion. Docket No. 48 at 6, ¶ 19. On February 23,

---

[5] Plaintiff denies this assertion on the grounds that the affidavit of Jessica Smeraglia, the Safeco claims agent for the claims in their case, is conclusory and lacks personal knowledge. *See* Docket No. 58 at 3-5, ¶¶ 11, 18. The Court disagrees. Ms. Smeraglia states that she has personal knowledge as she has "primary responsibility on behalf of Safeco for adjusting the comprehensive property damage claim made by Kathleen Kimsey stemming from damage to and 2018 Audi Prestige (the "Audi") caused by Austin Kimsey." Docket No. 48-2 at 1, ¶ 3. Mr. Smeraglia states that she has personal knowledge of the records "that are part of Safeco's claim file related to this claim." *Id*. Plaintiff also argues that there are "police-report characterization issues" with Ms. Smeraglia's declaration, but the police report states, and plaintiff does not dispute, that Austin "drove into the river intentionally." Docket No. 58 at 4-5, ¶ 18. Plaintiff also argues that plaintiff and Austin did not state that Austin drove the Audi into the river because the claim file shows "multiple caveats." *See id.* This does not dispute defendant's assertion that it relied on Austin and plaintiff's statement that Austin drove the Audi into the river. Moreover, Austin testified that he drove the Audi into the river. *See* Docket No. 48 at 2, ¶ 1; Docket No. 58 at 2, ¶ 1. Accordingly, the Court will deem admitted defendant's assertion of fact as to the nature of defendant's investigation into plaintiff's claim.

2023, defendant spoke with plaintiff regarding the denial of her claim. *Id.* On August 22, 2023, plaintiff's counsel wrote a letter to defendant asking it to reconsider its denial on the basis that the damage to the Audi was not caused by an intentional act and Austin was not a resident of plaintiff's household at the time of the January 23, 2023 incident. *Id.*, ¶ 20. On August 23, 2023, defendant confirmed its denial of coverage. *Id.*, ¶ 21.

After the January 23, 2023 incident, Austin moved from Atlanta to the Castle Pines Address. *Id.* at 9, ¶ 33. Austin lived at the Castle Pines Address until April 2023, at which point he moved with his parents to live on Oak Canyon Circle in Castle Pines, Colorado (the "new Castle Pines Address"). *Id*.

## II. LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc*., 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). A movant who bears the burden at trial must submit evidence to establish the essential

elements of its claim. *Harper v. Mancos Sch. Dist. RE-6*, 837 F. Supp. 2d 1211, 1217 (D. Colo. 2011).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115.

When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.* Cross-motions for summary judgment must be viewed separately, and the denial of one does not necessitate the granting of the other. *United States v. Supreme Court of N.M.*, 839 F.3d 888, 906-07 (10th Cir. 2016) (citations omitted).

## III. ANALYSIS

Plaintiff brings the following claims (1) breach of contract; (2) common law bad faith breach of an insurance contract; and (3) unreasonable denial or delay of insurance benefits pursuant to Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116, arising out of

defendant's denial of plaintiff's claim pursuant to the Intentional Act Exclusion. Docket No. 5 at 3-4. Defendant moves for summary judgment on all of plaintiff's claims. *See* Docket No. 48. Plaintiff moves for partial summary judgment on "the liability portion of her breach of contract claim against Safeco." Docket No. 49 at 2.

### A. Breach of Contract Claim

The elements of a breach of contract claim under Colorado law[6] are: (1) the existence of a contract; (2) performance by the claimant or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the claimant. *See W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Plaintiff contends that "[t]he only element at issue here is the third, Safeco's failure to perform." Docket No. 49 at 6. Thus, plaintiff moves for summary judgment solely on the basis that Austin was not a "family member" under the Policy because he was not a resident at the Castle Pines Address. *See id.* at 9. Accordingly, the Court will determine whether the undisputed facts allow the Court to determine whether Austin was a "family member" under the Policy.

"[P]hysical absence coupled with intent not to return is sufficient to sever the absent person's membership in the household" and his residency therein. *See GEICO Cas. Co. v. Collins,* 371 P.3d 729, 735 (Colo. App. 2016) (citation omitted). "Whether a person is a resident of a household for purposes of insurance coverage is determined by the facts and circumstances of each case." *Id.* at 733. In determining whether a person is a resident of a household, "a number of factors have been designated as

[6] The parties agree that Colorado law applies to plaintiff's breach of contract claim. *See* Docket No. 49 at 6; Docket No. 65 at 4. Accordingly, the Court will also apply Colorado law.

being important." *See Iowa Nat. Mut. Ins. Co. v. Boatright*, 516 P.2d 439, 440 (Colo. App. 1973). These factors include the following:

> The subjective or declared intent of the individual, the formality or informality of the relationship between the individual and the members of the household, the existence of another place of lodging by the alleged resident, and the relative permanence or transient nature of the individual's residence in the household.

*Id*. (internal citations omitted). "No one factor by itself is determinative of the ultimate issue" of residency, and all the factors must be "considered in light of the basic consideration of whether the parties to the insurance contract intended that coverage would extend to the alleged insured." *Id.*

***1. Austin's Subjective or Declared Intent***

Defendant relies on evidence that is insufficient to raise a genuine dispute of material fact that Austin intended to be a resident of the Castle Pines Address.[7] *See* Docket No. 48 at 15.[8] Defendant cites evidence that Austin used the Castle Pines Address for his voter registration and kept personal belonging at the Castle Pines

[7] Courts weighing the *Boatright* factors consider whether the person was a resident at the time of the incident in question. *See, e.g.*, *Drum v. USAA Gen. Indem. Co.*, No. 21-cv-02422-NYW-SKC, 2023 WL 2375078, at *9 (D. Colo. Mar. 6, 2023) ("But this statement is inapposite as to her intent to reside at the Grant Property *at the time of the Collision*. Ms. Drum's testimony does not directly address this issue, and she does not provide an affidavit or cite any deposition testimony evidencing her intent to reside at the Grant Street address *at the time of the Collision*."); *Olave*, 2023 WL 3178053, at *5 ("Construing the facts in the light most favorable to Plaintiffs, the Court concludes this factor is at most neutral in determining whether Ms. Olave could be considered a resident of the Property *at the time of the fire*.") (emphasis added); *Collins*, 371 P.3d at 734 ("The record does not show that Ryan had intended to move back in with Amanda *by the time of his accident*.") (emphasis added).

[8] Defendant also relies on its assertion of fact that Austin received "$5,000 med-pay benefits from Safeco under the Policy as a 'family member' and 'resident of [Plaintiff's] household.'" Docket No. 48 at 8, 15, ¶ 32. The Court does not find this fact relevant as defendant does not argue that plaintiff is equitably estopped or otherwise unable to argue Austin is not a family member based on his acceptance of med-pay benefits.

Address. *See id.* In *Drum*, 2023 WL 2375078, at *12, the court discounted evidence that concerned plaintiff's voter registration and the location where she stored personal belongings. Specifically, *Drum* found that plaintiff failed to prove she was a resident of the household where she did not "present any sufficient evidence to support that she was living with her father . . . at the time of the Collision merely because she received mail, maintained a voter registration, or left some personal belongings." *Id.; see also State Farm Mut. Auto. Ins. Co. v. Taussig*, 592 N.E.2d 332, 335 (Ill. App. Ct. 1992) ("We are unpersuaded by defendant's argument that simply because [plaintiff] still had a room in his parents' home and left some of his personal belongings there and continued to use the mailing address, he was still living with them.").

Defendant also relies on the fact that Austin used the Castle Pines Address on his driver's license and his tax returns. *See* Docket No. 48 at 15. Applying New York law, a New York court found that, "even where an individual has used a particular address for the purposes of registration to vote, filing of tax returns and for one's driver's license, those incidents, standing alone, do not establish residency at the given address." *DeCeglie v. State Farm Ins. Cos.*, 824 N.Y.S.2d 753, 2006 WL 2472674, *2 (N.Y. Sup. Ct. 2006).

The Court also finds that defendant's evidence showing that Austin used the Castle Pines Address for his vehicle registration and the medical discharge paperwork, *see* Docket No. 48 at 15, is analogous to the evidence analyzed and rejected in *Drum*, *Taussig*, and *DeCeglie* such that it is not indicative of Austin's intent to reside at the Castle Pines Address. *See also Barradas v. State Farm Mut. Auto Ins. Co.*, 2006 WL 852102, at *3 (Minn. Ct. App. Apr. 4, 2006) ("[Plaintiff] used her parents' address at

times, but the use of a household address is not dispositive of where one resides for insurance purposes.") (applying Minnesota law*); Fennell v. New York Cent. Mut. Fire. Ins. Co.*, 759 N.Y.S.2d 533, 535 (2003) ("Although [plaintiff] retained his parents' address on his driver's license and voter registration card, listed his parents' address on the police report following the incident, and continued to receive mail at his parents' house, these circumstances do not establish residency.") (applying New York law). Accordingly, the Court finds that defendant's evidence fails to raise a genuine dispute about Austin not intending to reside at the Castle Pines Address at the time of the collision.

Under Colorado law, a person can have two residencies. *See Olave v. Am. Fam. Mut. Ins. Co., S.I.,* No. 21-cv-02908-CMA-MDB*,* 2023 WL 3178053, at *5 (D. Colo. May 1, 2023) ("Colorado courts have observed that, under Colorado law, a person can reside in more than one place, and a person who has multiple residences may be temporarily living elsewhere.") (internal quotations and citation omitted). Here, however, there is no evidence to support this theory. Instead, plaintiff cites undisputed evidence that demonstrates, while Austin used his parents' address for certain purposes, he did not reside at the Castle Pines Address at the time of the January 23, 2023 incident. After graduating from college in May 2022, Austin spent a couple of days in Colorado, but did not stay with plaintiff. Docket No. 49 at 3, ¶ 8. Rather, Austin moved to Atlanta, rented an apartment, and signed a one-year lease. *Id.*, ¶ 9. Austin procured a job in Atlanta, looked at homes for purchase in the area, and received his Georgia State Real Property Appraiser License. *Id.*, ¶¶ 10, 15, 17. Although there is a dispute as to whether Austin sporadically visited his parents while in college, such visits do not

establish residency. *Am. Econ. Ins. Co. v. Sepic*, No. 24-cv-01673-NYW-CYC, 2026 WL 1642801, at *5 (D. Colo. June 8, 2026) ("When a person actually lives in one location, and sporadically visits, or keeps certain personal items at, another location, it is the location where he lives that is his residence.") (applying Colorado law) (alteration and citation omitted). Only after the January 23, 2023 incident did Austin live with his parents. Docket No. 48 at 9, ¶ 33.

Based on the undisputed facts and considering the facts in a light most favorable to defendant, the Court finds that Austin did not intend to be a resident of the Castle Pines Address. This factor weigh in favor of finding that Austin was not a resident under the Policy at the time of the incident.

### 2. *The Formality or Informality of the Relationship Between Austin and His Parents*

Defendant asserts that "the parent-son relationship between Austin and Plaintiff supports the conclusion that Austin was a family member and resident of the household." Docket No. 48 at 15. However, defendant does not cite any evidence showing that Austin and plaintiff formalized any pre-incident living arrangement for Austin to live with his parents, such as a lease agreement. Rather, defendant relies on indicia typical of an adult child who has recently graduated college, keeping belongings at his parents' home. The Court finds that, based on the undisputed facts considered in the light most favorable to defendant, this factor weighs in favor of finding that Austin was not a resident of the Castle Pines Address at the time of the incident.

### 3. *Austin's Other Place of Lodging*

It is undisputed that, after graduating from high school in 2019, Austin maintained a separate residence from his parents until January 23, 2023. *See* Docket No. 49 at 2,

¶¶ 2-7. Austin lived in Tuscaloosa while attending the University of Alabama and, when he returned to Colorado for his second summer of college, he maintained lodging separate from plaintiff. *Id.*, ¶ 3. After graduating from college, Austin began renting an apartment in Atlanta, *id.*, ¶ 7, where he had a full-time job. *Id.* at 3, ¶ 10.

In reply, defendant contends that "Austin and Plaintiff's actions demonstrated that Austin was always a resident of Plaintiff's household and Plaintiff never provided Safeco with any information to the contrary prior to the incident" and "had notice that Austin was living in Alabama while attending college." Docket No. 66 at 8. However, defendant provides no evidence that plaintiff violated some provision of the Policy by failing to inform defendant that Austin was not a resident of the Castle Pines Address.[9] Defendant also argues that, "in cases dealing with recent change in residence involving college students, courts have often looked to objective indicia of intent, such as the place of employment, driver's license, automobile registration, bank accounts, tax payments, location of personal property, and voting practices." *Id.* at 9 (internal quotations and citation omitted). As discussed above, however, the Court rejects

---

[9] In response to plaintiff's motion for summary judgment, defendant states that "the Policy required that Plaintiff inform Safeco of any changes relating to the Policy, including any changes to any licensed driver's residing in the household and the Policy precludes Plaintiff from concealing or misrepresenting any material facts or circumstances." Docket No. 57 at 10. However, in violation of the Court's Practice Standards, defendant did not assert any facts about this provision of the Policy in its Statement of Facts and plaintiff therefore did not have an obligation to admit or deny this fact. *See id.* at 11; Practice Standards (Civil Cases), Judge Philip A. Brimmer, § III.F.3.b.iv-v. Moreover, defendant does not raise this argument to suggest that Austin was not a "family member" at the time of the January 23, 2023 incident, but rather to argue that the Court should not grant summary judgment on the issue of liability. However, the Court will only grant plaintiff's motion to the extent requested in her motion, which is on the issue "that Austin was not a resident of Ms. Kimsey's household at the time of the accident, and thus is not a resident relative for which the Intentional Act Exclusion can exclude coverage under Policy." *See* Docket No. 49 at 9.

defendant's argument that Austin's actions demonstrated an "indicia of intent" to reside at the Castle Pines Address due to the Castle Pines Address being listed on his driver's license, automobile registration, taxes, and voting registration. *See id.* Rather, when viewing the evidence in the light most favorable to defendant, no reasonable jury could conclude that Austin intended to reside at the Castle Pines Address. Moreover, the cases cited by defendant are inapposite. *Wallace v. HealthOne*, 79 F. Supp. 2d 1230, 1232 (D. Colo. 2000), and *Bair v. Peck*, 738 F. Supp. 1354, 1356-58 (D. Kan. 1990), concern domicile and issues of the parties' citizenship for purposes of establishing diversity jurisdiction, not residency. *See also Drum*, 2023 WL 2375078, at *12 (rejecting "arguments relate[d] to Ms. Drum's domicile, but not her residence" in determining whether she was a resident under the relevant policy provision). Accordingly, this factor weighs in favor of finding that Austin was not a resident of the Castle Pines Address at the time of the incident.

#### ***4. Relative Permanence or Transient Nature of Austin's Residence at 446 Courtfield Way***

The undisputed facts demonstrate that Austin's residence at the Castle Pines Address was of a transient nature. After graduating from high school, the only time Austin stayed at the Castle Pines Address was in 2020 during his first summer of college during the COVID-19 pandemic. Docket No. 49 at 2, ¶ 4. Even when Austin did return to Colorado, he did not stay with plaintiff. *See id.* at 2, 3, ¶¶ 5,8. There are no undisputed facts showing that Austin stayed at the Castle Pines Address after 2020 and before the January 23, 2023 incident. Accordingly, this factor weighs in favor of finding that Austin was not a resident of the Castle Pines Address.

#### *5. Weighing the* Boatright *Factors*

Under the Policy and pursuant to the Intentional Act Exclusion, defendant will not pay for the following:

> 21. Loss to your covered auto or a non-owned auto caused by:
>
> a. an intentional act of; or
> b. the directions of;
>
> you or a family member.

Docket No. 48 at 5, ¶ 15 (emphasis omitted). Under the Policy, "you" is defined as the "named insured" shown on the Declaration and the named insured's spouse or domestic partner. *Id.*, ¶ 16. "Family member" is defined as a "person related to you by . . . blood . . . who is a resident of your household, even if temporarily living elsewhere." *Id.*, ¶ 17. It is undisputed that Austin is related to plaintiff by blood. Because the Policy does not define the term "resident of your household," the Court relies on the *Boatright* factors to determine whether Austin was a resident of plaintiff's household at the time of the incident. In considering the *Boatright* factors, which all weigh in favor of plaintiff, and viewing the evidence in the light most favorable to defendant, the Court finds that no reasonable juror could conclude that Austin resided at the Castle Pines Address at the time of the January 23, 2023 incident. Given this finding, no reasonable jury could find that Austin was a "resident" of plaintiff's household under Definitions Section I of the Policy, and therefore a "family member" under the Intentional Act Exclusion, Exclusions Paragraph 21 of the Policy. *See* Docket No. 48-4 at 67, 81.

Accordingly, the Court will grant plaintiff's motion for partial summary judgment, finding that Austin was not a "family member" as defined under the Policy and,

therefore, the Intentional Exclusion Act was not applicable to Austin at the time of the incident.[10] *See Collins*, 371 P.3d at 737 (holding that the "district court properly granted summary judgment to GEICO on this coverage issue" of whether plaintiff was a resident of the household). Because plaintiff's claim was not subject to the Intentional Act Exclusion, the Court will deny summary judgment for defendant on the breach of contract claim.

**B. <u>Statutory Bad Faith Claim</u>**

Defendant seeks summary judgment on plaintiff's bad faith claims. *See* Docket No. 48 at 2. Pursuant to § 10-3-1115, an insurer may not "unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." Colo. Rev. Stat. § 10-3-1115(1)(a). An insurer's conduct is unreasonable "if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action." Colo. Rev. Stat. § 10-3-1115(2). The determination of whether an insurer has breached its duties to the insured is one of reasonableness under the circumstances. *Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 523 (Colo. App. 2008). In other words, the question is whether a reasonable insurer under similar circumstances would have denied or delayed payment of the claim. *Id.* The reasonableness of an insurer's conduct must be determined objectively, based on proof of industry standards. *Schultz v. GEICO Cas. Co.,* 429 P.3d 844, 847 (Colo. 2018). "These standards may be established through expert opinions or state law." *Peden v. State Farm Mut. Auto. Ins. Co.*, 841 F.3d 887, 890 (10th Cir. 2016) (applying Colorado

[10] Because Austin was not a family member and plaintiff's claim was therefore not subject to Intentional Act Exclusion, the Court does not reach the issue of whether Austin's act of driving the Audi into the river was "intentional" under the Policy.

law). Whether an insurer's conduct was reasonable under the circumstances is ordinarily a question of fact for the jury when conflicting evidence exists. *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 497 (Colo. App. 2011). However, in appropriate circumstances, as when there are no genuine disputes of material facts, reasonableness may be decided as a matter of law. *COPIC*, 192 P.3d at 524.

Defendant argues that it is entitled to summary judgment on plaintiff's statutory bad faith claim because it "reasonably investigated the incident, including interviewing Plaintiff and Austin and reviewing the police report and the police investigation's finding that determined that Austin 'drove into the river intentionally.'" Docket No. 48 at 18. Plaintiff responds that summary judgment should be denied because defendant failed to properly investigate and document the investigation before denying plaintiff's claim on the basis of the Intentional Exclusion Act. *See* Docket No. 58 at 17.

Defendant fails to show, based on the undisputed facts and viewing the evidence in the light most favorable to plaintiff, that plaintiff fails to prove an essential element of her statutory bad faith claim. Instead, defendant focuses only on its investigation into whether Austin's act of driving the Audi into the river constituted an "intentional act" under the Policy. *See* Docket No. 48 at 18. It is defendant's burden, as the moving party, to identify a lack of evidence for plaintiff on an essential element of her claim. *See Bausman*, 252 F.3d at 1115. Defendant has failed to meet that burden. In reply, defendant argues that its denial was based on the "information from the Policy and Safeco underwriting regarding Austin's residency." Docket No. 66 at 10. First, this argument cannot be raised for the first time in reply. *See Titan Feeding, LLC v. Corey Cattle Co., LLC*, No. 19-cv-02541-PAB-SKC, 2022 WL 4182458, at *8 (D. Colo. Sept.

13, 2022). Second, defendant fails to identify what evidence it considered when investigating Austin's residency and fails to cite undisputed facts that show defendant considered certain evidence.

Furthermore, plaintiff has raised a genuine dispute of material fact regarding her statutory bad faith claim. It is undisputed that, on August 22, 2023, plaintiff's counsel asked defendant to reconsider the denial of plaintiff's claim on the basis that Austin was not a resident of the Castle Pines Address. Docket No. 48 at 6, ¶ 20. One day later, defendant responded by confirming its denial. *Id.*, ¶ 21. It is undisputed that defendant, in responding to the August 22, 2023 letter, merely reaffirmed its denial in the February 22, 2023 letter that plaintiff has disputed as failing to address the issue of Austin's residence. *See* Docket No. 48 at 6, ¶ 19; Docket No. 58 at 5, ¶ 19. Thus, plaintiff has raised a genuine dispute of material fact as to whether defendant ever considered Austin's residency in denying her claim, despite plaintiff raising the issue. Plaintiff has also raised a genuine dispute of material fact regarding what a reasonable investigation by Safeco into Austin's residency could have uncovered. *Compare Vansky v. State Farm Auto. Ins. Co.*, No. 20-cv-01062-PAB-NRN, 2022 WL 900160, at *7 (D. Colo. Mar. 28, 2022) (finding that, "although plaintiff argues that defendant's investigation of his claim was inadequate, plaintiff has not identified what further investigation could or would have uncovered" and "Plaintiff therefore has not shown a genuine dispute of material fact that defendant unreasonably delayed or denied his UIM claim") (applying Colorado law). As discussed above, the undisputed facts demonstrate that Austin was not a resident of the Castle Pines Address. A reasonable jury could conclude that defendant's failure to obtain additional information regarding Austin's residency, despite

plaintiff raising the issue, meant that defendant conducted an unreasonable investigation, thus evidencing bad faith.

Because the Court finds that there is a genuine dispute of material fact regarding plaintiff's statutory bad faith claim, the Court will deny summary judgment for defendant on this claim. *See Sanchez-Bell v. CSAA Gen. Ins. Co.*, No. 22-cv-1678-WJM-STV, 2024 WL 2817504, at *4 (D. Colo. June 3, 2024) (denying defendant's motion for summary judgment "with respect to Defendant's argument that its investigation was reasonable as a matter of law" because "what constitutes reasonableness under the circumstances is ordinarily a question of fact for the jury" and "Defendant has provided no reason why this case is one of the relatively few appropriate circumstances to deviate from this general rule") (applying Colorado law) (alteration, internal quotations, and citations omitted).

**C. <u>Common Law Bad Faith Claim</u>**

To succeed on a Colorado common law bad faith claim, "a plaintiff must show that the insurer acted both unreasonably and with knowledge of or reckless disregard of its unreasonableness." *Hyden v. Farmers Ins. Exch.*, 20 P.3d 1222, 1226 (Colo. App. 2000). If a claim is "fairly debatable," that weighs against a finding that the insurer satisfies the "knowledge or recklessness prong of common law bad faith." *Fisher v. State Farm Mut. Auto. Ins. Co.,* 419 P.3d 985, 990 (Colo. App. 2015) (citation omitted). However, "[t]he fact that a claim is fairly debatable, without more, does not defeat a common law bad faith claim." *Bise v. Am. Fam. Ins. Co.*, No. 22-cv-03270-REB-KAS, 2024 WL 3023549, at *4 (D. Colo. May 7, 2024) (applying Colorado law).

"A common law claim requires that the plaintiff prove both that the insurer acted unreasonably *and* that the insurer knew that it was acting unreasonably, thus heightening the requirements of a statutory bad faith claim." *See Copper Creek Inc. v. State Farm Fire & Cas. Co.*, No. 21-cv-01603-NYW-MEH, 2022 WL 17454493, at *12 (D. Colo. Dec. 6, 2022) (applying Colorado law); *Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985) ("if an insurer does not know that its denial of or delay in processing a claim filed by its insured is unreasonable, and does not act with reckless disregard of a valid claim, the insurer's conduct would be based upon a permissible, albeit mistaken, belief that the claim is not compensable"). The "knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured." *Savio*, 706 P.2d at 1275 (quoting *Anderson v. Cont'l Ins. Co.*, 271 N.W.2d 368, 377 (Wis. 1978)). An insurance company recklessly disregards the unreasonableness of its coverage position when it acts with knowledge that its position lacks a reasonable basis or when it is deliberately indifferent to information concerning the claim. Colo. Jury Instr., Civil 25:7.

Defendant argues that it is entitled to summary judgment because "there is no evidence that Safeco acted will [sic] the heightened mental state necessary to sustain a common law bad faith claim and either knowingly or recklessly disregarded the validity of Plaintiff's claims." Docket No. 48 at 19. Defendant contends that it "reasonably evaluated Plaintiff's claims for benefits." *Id*. at 20. Plaintiff responds that "when Ms. Kimsey's counsel raised both the household and intentional act issues – and Safeco

didn't conduct any further investigation, the only conclusion is that Safeco recklessly disregarded the validity of the claim." Docket No. 58 at 19.

Again, defendant does not explain what it did to evaluate Austin's residency after receiving information from plaintiff's counsel that Austin was not a resident of the Castle Pines Address. Instead, the undisputed facts demonstrate that defendant denied plaintiff's claim only one day after receiving the letter from plaintiff's counsel. *See* Docket No. 48 at 6, ¶¶ 19-21. Accordingly, a reasonable jury could conclude that defendant was deliberately indifferent to the residency issues raised by plaintiff when it denied plaintiff's claim. Because a common law bad faith claim can proceed where a defendant is deliberately indifferent to information concerning the claim, *see* Colo. Jury Instr., Civil 25:7, the Court will deny defendant's motion for summary judgment. *See* *Cody v. Am. Fam. Mut. Ins. Co., S.I.,* No. 23-cv-03107-STV, 2025 WL 2996632, at *7 (D. Colo. Oct. 23, 2025) (holding that "there appears to be a genuine issue of material fact as to whether Defendant acted unreasonably under the circumstances in denying or delaying benefits and whether it acted with knowledge or reckless disregard for the validity of Plaintiff's claim" where plaintiff provided evidence that defendant's claim evaluation never mentioned information provided from plaintiff's expert).

## IV. CONCLUSION

Therefore, it is

**ORDERED** that Defendant Safeco Insurance Company of America's Motion for Summary Judgment [Docket No. 48] is **DENIED**. It is further

**ORDERED** that Plaintiff Kathleen Kimsey's Motion for Partial Summary Judgment [Docket No. 49] is **GRANTED**.

DATED September 1, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge